Calling case 14-3107 Penn LLC et al. v. Prosper Business Development Corporation et al. Oral argument not to exceed 15 minutes per side. Mr. Aveni for the appellant. Before you get started but while we're on the record Judge Cook would like to make a statement. Yeah I'd like to have the floor for some of these parties and I found ourselves at dinner at the same place and we had a conversation but it did not include the awkward situation we have today not the case we didn't discuss the case so we just have that as a matter of the record please. Thank you. Good morning your honors Carl Aveni on behalf of plaintiff appellant Penn LLC I'd like to reserve four minutes for the touchstone of every trial the fundamental question procedurally that must be asked of every trial is did the parties get a fair shake was the process itself designed in a way and applied in a neutral way that would allow each party to say at the end whether we won whether we lost we had a fair day in a single large error that is manifest and obvious I'll submit that we have some of that here there are other times when there's a hundred little errors the cumulative effect of which distorts that same playing field and as the court has seen from the briefs we most certainly have that here as well the question that the court must ask itself is whether looking at not a particular error by itself but rather in the aggregate the way a jury does was this a fair trial I would submit to the court that it was not the entirety of the proceedings over the course of 16 days the entirety of the discovery process that led up to it led to an ineluctable result that the plaintiffs were held to a different standard than the defendants in terms of the case schedule in terms of the disclosure of witnesses in terms of the disclosure of damages and substantive evidence in terms of what could be said about the rulings that the court had and the net effect of all of that could I interrupt you yes your honor well the first I think you're one of your first claims is that you should have received judgment as a matter of law that's correct okay on the counterclaim that's right and I'm I mean it pains to figure out what you could have reaped there in light of the fact that the arbitration award was halved essentially and it had been halved before you already knew that was coming did you not the hadn't been journalized as I am I right about that's correct your honor it had not been journalized before the suit was this the federal suit was filed right so you're filing suit when you already know that that's coming down the pike the arbitration award everybody knew that that the arbitration award was this court the breach of fiduciary duty claim in its totality the arbitrator had declined jurisdiction on those issues so it wasn't so much that there were wasn't so much that there were particular wasn't about the damages it was about the claims there had been certain claims that because of the way that they arose in the course of the arbitration the arbitrator we damages I beg your pardon your different damages different damages different theories of claims that were not litigated in the state courts that's correct and that could not be litigated in this that's correct we had submitted to the arbitrator through former counsel I wasn't involved in the case at that point but Penn had submitted and asked for the arbitrator to accept jurisdiction on a whole host of other issues that were related and flowed out of the well the breach of fiduciary duty claim so the specific new federal claim is the breach of fiduciary duty claim unjust enrichment and conversion that's right and also the RICO claim yes that's correct and there was also a pending other pending state court proceeding there were there were a total of three proceedings that were happening was the arbitration proceeding that was then enrolled in front of Judge Frye and what was the topic there the the topic there was whether the reinstatement of Penn as a member of big research LLC and then ultimately sanctions against the defendant for hiding material in the course of discovery and was found that that they had intentionally in the in the arbitration in front of the arbitrator it came out and so they that materials had not been disclosed that were substantial and that were intentionally with kind of a theme here that's certainly that's that's right your honor we've heard this the song before and we typically inquire when when that gripe is raised we say and we ask the other side and did you disclose and so in let's get back to this this appeal and these issues and the breach of fiduciary duty the there was a there was a complaint that non-disclosure on your behalf but I want to ask you say Prosper didn't produce different documents that you that's correct with each of those instances did Penn was Penn forthcoming with all the items that they now complain that Prosper did not produce we were we were we produced voluminous material we had three separate if there was one issue that that ran throughout the entirety of discovery it was Penn's efforts to get disclosures of documents from the defendants and and you make the disclosures at the same at the proper time we did we did we know their arguments are that you did not well that's simply not like how can you to have different stories on that we absolutely disclosed at every step along the way what not only what our measure of damages were but the underlying calculations throughout and and again the record itself a trial reflects Penn saying judge we've never heard any of this before they've never disclosed any of this particularly as it goes to the damages issues but time that happens council now will be specific as we go along but each time Penn throws up its we we asked for this the civil rules of course provide for methods of moving to compel you know so so you can't be heard to complain they never gave it if you didn't access the the opportunities in the civil rules to press the matter we utilize those rules your honor we that the entirety of 2012 could be efforts through the court we had three separate here at three separate status conferences with the court to get them to disclose documents and complaining to the court that we hadn't seen them we then had an evidentiary hearing in July of 2012 and in August of 2012 the court issued an opinion directing those things that we could have access to and those things that we couldn't we then move for reconsideration and lost that issue as well and ultimately the the jarring thing is the court declined to require the defendants to produce their legal fees their legal bills on redacted on the basis of privilege they never disclosed there was never any indication until trial itself that that would in fact be the entire the entire basis for their abuse of process damages we always figured that if you're surprised after discovery that you didn't ask the right we asked the right questions for a year and we got shot down we lost those issues get to the point of you didn't invoke the power of the court to to ensure that you get what you were entitled to magistrate camp issued an opinion that said we're going to produce this don't produce this you don't have to produce this and and and the things that he said and non-production occurs thereafter what does Penn do they produced what the court ordered them to produce we didn't we lost that motion and so we did not have access because the court had ruled there's an attorney-client privilege issue here we're not going to let them see any of the attorneys fees that what they gave us were a sheet of attorneys fees where everything was redacted everything there was the name of the recipients the name of the payor and a number and everything else for four years worth of legal fees and remember that these feel hard to imagine a registered judge okaying that that this is an unusual case from a variety of different perspectives now just offering you the lifeline to tell the whole story because you know we can we can expect that your opponents will tell us that something more reasonably done your honor I'll submit to you that that is the story we we were we were surprised by it as well now at the time that the judge did this the magistrate judge did this on I believe it was August 20th of 2012 but in any event in August of 2012 it's in the record at the time that he did this nobody was looking at the abusive process counterclaim as being the basis for this production the issue here was more because it hadn't been disclosed as being an element of their damages for abusive process the issue here at this point was we had submitted interrogatories I said tell us all the all the damages of your counterclaim and what was their response then those timely supplement now we didn't know it is true that we by the time we depose mr. wrist we did not inquire into the specifics of that he might consider his elements of damages it was his affirmative duty not only to disclose but to disclose and produce you mean having been asked having been asked and also under rule 26 it's not just having been asked it's having been asked and the parties don't cooperate as they ought to that's where the muscle of the court comes in and you have to seek that that's right and having invoked that muscle of the court we lost that issue the magistrate judge said you do not have to produce the attorney's fees you do not have to produce the unredacted documents the first time we heard anything about what that measure of damages would be it was at trial now what we got from the court or excuse me from the defendants in the in discovery was a sheaf of attorney's fees fully redacted there were four or five separate cases and sets of lawyers doing different things the issue at that point was were the defendants breaching their fiduciary duty by causing big research to pay these attorneys fees that was the issue that we were at that point one starts noticing depositions to find out what's behind those records and and we did we took we did 16 depositions I believe it was in this case but again the court had already decided these were a these were an array of documents that based on the defendants objections the defense had a duty at that point to say this is an element of our case we have to produce these things and having failed that duty of disclosure the magistrate said okay you don't have to produce these things and then we move for reconsideration in front of Judge Frost and got a pretty letter sharply worded opinion saying no the court meant what the court said there wasn't much else we could do at that point but we certainly didn't expect to be sandbagged by it so you're now does it does it boil down to the fact that what was redacted is actually the measure of damages that went to the jury that's right well we don't know we don't know you don't know what went to the jury well they they said in their trial that on the stand that on my cross-examination when we were hearing this for the first time they said 1.8 million dollars in attorneys fees are our damages and that was based on the entirety of their attorneys fees bills because you did have the entirety that's correct that's correct it was based on the entirety what what he said and we have no way of testing it because of course we don't have the records that would allow us to do that we don't know whether it's been paid by big research or by and reimbursed by big research or not we don't know whether that's actually their damages but just taking what they said at face value they said 1.8 million dollars in attorneys fees and that was from the beginning of this case to the end of this case but but we have no way of getting behind that because the court had declined to allow us to look at the records the red light is on so your time is up but one last question I didn't want to interrupt with but the state court action what has happened to the state court action there were there were several state court actions it was the one that enrolled the award and that was over that was over very quickly after the filing of this case and when you say it enrolled the award so that was an award of how much was enrolled the arbitrator had awarded 1.4 million and then that was reduced to 700 because it would have paying 1.4 million would have made big research and solvent so the court required the defendants to in fact disgorge half of what they was there an appeal of that in the state court the defendants appealed that so what has happened in that it's been resolved it was all affirmed it was affirmed by the state court of appeals yes and did it go to the Supreme Court no okay and then you're saying there's another state court action there was another state court action that the defendants had filed for permission to unwind or wind down big research that was pending in front of Judge Bessie that's called the Bessie case and the issues there are not really before this court okay thank you was there a permanent injunction entered against to prevent dissolution no no big research has been has been dissolved there was no payment of the judgment in the state court no there was I'm sorry your honor no they they paid but because big research didn't have a million for to pay to pay the plaintiffs my clients pen in the same way that they had paid the defendants had paid themselves that if the judge fries solution was to order the defendants to disgorge half of what they had taken and pay it directly to to pen and so that was that that issue was resolved pen was paid is there what pet what pens beyond this appeal between the parties here does any is any litigation still no in in play no this is this is the litigate this litigation is about whether the defendants properly and fairly on wound down big research and that is the last piece of it and so art we submit that defendants did not our British fiduciary duty claim was based on the defendants paying themselves and taking elements of big research to themselves and starting a new corporation that does the same sorts of things that that issue what remedy are you seeking from this court at this stage of the game several remedies we're asking for the entirety of the both awards the denial of our claims and the award of the visa process claim to be reversed we would submit that it's appropriate for the court to denial of your claims we would like a neutral I I'm sorry your honor I would like a new trial on our claims we would like the court to direct as a matter of law on their claims judgment as a matter of law on their claims as the trial court should have but we recognize that the that it would be also possible for the court to send the thank you thank you your honor so you've been shaking your head a lot I'm sorry your honor you have a lot to say here good morning your honors my name is Gage Gosnell I'm here on behalf of the defendants and counter claimants let me first say and try to clarify the record and what actually happened here first let's set the stage at the time that this federal lawsuit was filed there were three pending actions between the parties one was what we call the judge fry action which was the challenge by big research as to the arbitration award the second lawsuit pending in the state court system was a lawsuit actually filed by pen and it was challenging and seeking an injunction to stop the disillusion of big research and there was an ongoing continuation what we called the second arbitration pending between the parties in front of the arbitrator I mean there were two arbitrations it was faster because we have a lot of okay we there were two we call them two arbitrations one arbitrator it was a continuation the first stage of the arbitration dealt with whether pen you're talking about when eventually it was halved it was eventually it went in stages your honor quite frankly there was a decision by the arbitrator that said pen is back into big research and ultimately big research needs to pay pen 1.48 million dollars that decision was appealed or challenged to judge fry under the theory that having to pay that much money would make big research and that's the one was reduced to 700,000 that was what I call having it that's right by the judge and that was yes your honor and according to your opponent in response to my question that was appealed by somebody to the Court of Appeals and affirmed by the Court of Appeals and that's the end of that case and the amount has been paid is that correct or wrong actually that decision I do not believe was appealed okay that what was appealed was then what we call the arbitrator dealing with some issues that are not relevant today but there was another small minor award essentially granted that went also to judge fry judge fry issued an order confirming that that one was concern ourselves we don't need to concern ourselves with that let's not talk about yeah that was not that is not what's that issue here let's talk about discovery three years essentially of pretrial litigation scorched-earth discovery three four maybe five status conferences with the court between the magistrate and the judge over what was the scope of production to handle everything wouldn't when does judge fry come in only for trial I mean judge frost yes magistrate judge camp dealt with the discovery matters essentially all the way through the motion to compel the evidentiary hearing on the motion to compel and magistrate Kemp's order which was issued in August after that and after the trial date was was ultimately continued judge frost started to take a more active role in a few of the discovery issues and a couple of the other status conferences that we had there's so much going on in this case that it's hard for us to know what's the most important thing but it seems to me that your opponents big point on disclosure discovery etc is that they didn't know from the lump sum of 1.8 million attorneys fees what was being spent on things that legitimately could be part of the damages equation so how would you respond to that yeah let me respond in multiple ways first of all the testimony was a very specific number we're not talking about a speculative or uncertain number mr. wrist testified on the date of some number that's not no no he said we have spent 1.7 7 7 1 120 thousand dollars in legal fees on this litigation to defend the whole of the litigation what was the litigation that was the testimony and that was the subject of cross-examination and we would submit that that is the proper measure of damages under the law and your honors but do they have to take as a as a given your own statement by your own lawyer that we have spent 1.7 million dollars I mean don't they have a right to know the breakdown and know what is spent on what issues in the case your honor let's take a step back we their complaint is not that we didn't disclose the number or how much we did disclose documents showing how much prosper was spending in the litigation their complaint is that we did not that contained the narrations of what work was being done in litigation they did not seek the discovery of those documents in front of magistrate Kemp please read judge frost or in front of judge frost please read magistrate Kemp's order the issue in front of magistrate Kemp was of the fee bills that we did because we did produce fee bills big research produced fee bills monthly fee bills of its its legal bills and some of the fee bills that prosper had incurred because big research had indemnified that we had produced those there's an issue about that there was an issue and I said like an answer a kind of a direct I don't need two or three you know the issue was whether those redactions were proper or not and magistrate Kemp decided that no that's not my question okay sorry your honor there is some vagueness about payments from big research that reimbursed prosper on fee on legal bills it's in the testimony vagueness okay some were reimbursed and the witness I think it's mr. wrist in his deposition said yes some of those were paid correct and and Penn knew how much they were paid because Penn had I don't see that anywhere that Penn had the entirety of big research's records but if it's just numbers it doesn't it's not helpful is it they can't discern what's it's just this date this number we're all familiar with legal bills and they usually then so apparently all the back backstory and information has was redacted I haven't seen them what was submitted we have an obligation to produce that which is asked for and that which we are ordered to produce okay and that that's the upshot here you say they didn't ask for it they didn't ask for it the none of their discovery requests not a single interrogatory that asked describe your counterclaim damages and produce the documents for it in the 11 hours of was on the counterclaim what's that it what I don't know why my mic doesn't work now it's my hearing your honor that seems like that Penn wasn't focused on that they would be paying damages in the counterclaim I think that's a fair accurate statement they were not focused on that okay so the counterclaim is the abuse of process claim right okay so a fundamental question that I have is why is the filing of the federal lawsuit and the prosecution of the federal lawsuit an abusive process now it's not the filing because everyone has stipulated that the filing itself was based on probable cause right or some there was some stipulation to that effect is that right yes what are the elements of an abusive process claim your honor is that the is that the cause and that's the key distinction between an abusive process claim and what would otherwise be styled as a malicious prosecution claim okay so so my basic question and again you can see I'm trying to get to the basics here why is the pursuit of this federal court lawsuit which raised a RICO claim and then according to your opponents raised some other claims that could not have been dealt with in the arbitrators action in state court why is pursuing the federal action an abusive process well I think there's a little bit of a disconnect the filing of a lawsuit can support an abusive process claim when the filing of a lawsuit is being used for an ulterior purpose that is the essential nature of an abusive process claim but if the ulterior motive ulterior purpose here seemed to be something that's done every day particularly in a in a mess like this a global settlement yeah your honor what what is the sin in that right this isn't a typical pre suit demand where where the one party says give us X thousand millions of dollars or we're going to file a lawsuit against you that's not what this case is about I would point to read it it's almost exactly that no your honor we would submit that would you would you look at all the facts and circumstances and I would like you to compare this case to what this court said in Luciana and Luciana the defendant made essentially the same argument this lawsuit was just part of some global settlement after it was so difficult to think is that it's similar Luciano is domestic relations but the court's analysis was if you file a lawsuit in which and then you use that lawsuit as a bargaining chip to try to settle claims that are not part of that lawsuit but are but are part of a different lawsuit and so this court specifically said while it was okay to file a claim settlement would have to involve others other cases others you know other actions in I don't know I Luciano I have to think I have a problem with why it's about child custody and those kinds of equitable remedies versus the money aspect it seemed that that was implicit in the distinctions the court drew in Luciano well your honor Rob has reports Rob decision and Yakovic decision make it clear that trying to use a lawsuit to obtain money it can support an abuse of process claim I don't really understand this and this is fundamental to the case Luciano first of all is an unpublished case so it's not binding us so we have to get to what is the issue here so we have Penn filing a federal court lawsuit with a RICO claim and with several state law claims and the your opponent says some of those state law claims were not in fact able to be resolved in the arbitral action in front of Judge Fry so why can't the plaintiffs in the federal action say in order to resolve all of our disputes we'll propose a global settlement which will include the state court action and our hypothetical five claims in the federal court action and why should that be an abusive process aren't you basically depriving the issue for this court in the issue for Judge Frost and ultimately the issue for the jury was was the federal lawsuit was this federal lawsuit used as an bargaining chip and ulterior purpose of trying to obtain something that they couldn't otherwise obtain in this lawsuit but if they could obtain it in the federal lawsuit properly why would it be an abusive process to bring the federal lawsuit it it it's an abusive process to bring a lawsuit for an ulterior purpose Rob even if even if the federal lawsuit has merit has merit absolutely that is the distinguishing characteristic of an abusive process claim look at the Ohio Supreme Court decision and Robin Yankovich that the probable cause and actually can be successful the issue is not whether the claims or all the claims that were brought in the federal lawsuit have potential merit or not that's not the issue the issue was did they file the lawsuit to obtain a collateral purpose that wasn't the actual purpose of the lawsuit and we would submit that when you look at all the facts and circumstances here the jury could find that the federal lawsuit was being used as a bargaining chip to obtain the arbitration award that they won knew was was likely to be reduced and then it was reduced and then two days three days later we have this federal lawsuit so if they had not explicitly offered to have a global settlement but had simply let the federal lawsuit go to full fruition would there be an ulterior purpose your honor I don't know that there was an explicit global settlement I mean I think that was a jury question as to what the what the settlement negotiations were here. I'm asking sort of a hypothetical here if the federal lawsuit is filed with the RICO claim and five state law claims and there's never any mention by the Penn people about the state court litigation and the federal suit which we which we have stipulated has merit enough to be avoiding a malicious prosecution claim would that would there be a potential for abuse of process under that hypothetical scenario right just that they had filed the lawsuit itself and proceeded with the lawsuit because you I understand that the filing of the lawsuit is not the essence of the abuse of process claim it's what happens well it's whether the issue is whether the jury could find that the filing of the lawsuit was used as a bargaining chip to obtain something that they weren't otherwise able to obtain in the lawsuit and here we have a demand for essentially the full arbitration amount that demand never changed throughout the negotiations we have a settlement quote settlement negotiations in which Penn's lawyer tells Mr. Arnold hey you really should pay the full arbitration amount because we're going to file another lawsuit and by the way this lawsuits not just going to name your defend your clients as a party but it's going to name you and your law firm as a defendant are you sure you don't want to settle this case? The jury heard that type of testimony. We heard that on the few days right after the judge Fry said you don't have to pay 1.4 million you only have to pay $700,000 the lawsuit is filed the lawsuit is filed against Mr. Arnold and the law firm and the defendants it raises RICO and fraud claims that soon after the complaint is filed we get another demand for the same amount you really need to focus is on the demands that were made both pre-filing of the federal lawsuit and post-filing that is part of all the facts and circumstances that was presented to the jury and after the complaint is filed we have a Mr. Arnold I'm doing you a favor here you really should pay have your clients pay this arbitration amount again the same amount there's no kind of valuation of what the federal lawsuit is worth pay us the amount that we've demanded the whole time and you can make this whole thing go away and we and then we have here allowed you to go way over your time as we did and you have a question yes please the the the argument is that there were failures to disclose on your part with regard to the legal bills and other things the district court seemed to excuse those failures to disclose so you could address that but the court seemed to excuse it by saying there was a right of cross-examination on the part of Penn but I I'm having trouble with how Penn is fairly treated where there's a failure to disclose because they have to on the spot your honor I would just simply submit that we didn't fail to disclose there was no obligation for us to give them the narration portions of our legal fees and they haven't even presented that as an as an error that's one right so so we didn't have to present the narrative we didn't have to give them the narratives and they haven't argued that we were obligated to give them the narratives what they're arguing is is that one they somehow asked for him and the judge to give it to him which if you read the judge's decision that issue the judge never says they've argued that they want all the fee bills that haven't been produced that's not what the judges said the judge said you need to pre-produce those fee bills that you did produce but in a less redacted form which we did if they had asked if they had asked magistrate Kemp we want all the fee bills that Prosper has incurred in this litigation and will continue to incur in this litigation the magistrate Kemp clearly didn't order us to produce that and if that was error Penn had an obligation to then file an objection with the district court judge and ask the district court judge to say the magistrates got it wrong here make them produce those fee bills they did not do that thank you on April 20th excuse me March 20th somewhere in April and again in May we had status conferences with magistrate Kemp that were actually on the record need to ask you a couple questions yes your honor if we understand you need to yes our time Prosper suggests that you never moved to compel when you needed to that it's right in their brief it's it's so we'll figure it out it's right in the record which thing where did you on what matters did you did Penn move to compel we we how many times did you the whole the whole vehicle we're talking about the bills in it I'll just read the quote to your honor if I may on in transcript record 108 page ID numbers 3 1 3 0 through 3 1 3 1 in front of the magistrate in I believe that was the April conference with the court mr. Arnold said everyone's looking at me it sounds like everyone wants an answer for me this is on the bills and this is a genuine impasse we're not going to give them for example our fee bills submitted to our clients in this litigation I guess I'm searching for a filing labeled motion to compel disclosure there is a motion for reconsideration of the court's order no I'm asking about something else motion to reconsider happens after judgment yeah we moved the way this worked your honor we had a motion to compel that we filed in I want to say March before the issues were fully vetted and we we set up a status conference with the court we had a status conference with the court in March another one in April and another one in May and the court set us for an evidentiary hearing to resolve these discovery issues we had an expert come in and say this is why we need the bills this is why we need all of Prosper's financial records and we were we were effectively shut down in that magistrates order saying no you can't have those things and then no what action was taken to overturn that we moved the court for reconsideration was how we styled it and I believe that was in September of 2012 it's in the record not after judgment usually motions to reconsider it we may have styled it in a way that's unfamiliar with the court but we asked the court for clarification did you really mean what you really meant but what you said and the courts magistrate judge yes I apologize how about judge frost was brought to judge it was brought to judge frost and judge frost affirmed it I'm a little weak on exactly what it was it was in the fall of 2012 question I have is did prosper ever move to disqualify Arnold did depend ever move to disqualify yeah never not in this case never no we we did not but you thought he was he hadn't he shouldn't have been but the fact witness he wasn't listed he hadn't been disclosed as a witness your honor when he showed up when he when he started testifying was there ever a motion to disqualify him what the court preempted us on that what happened was at the August 20th pretrial the final pretrial before the court may have been August 21st the court we said judge we found out they're identifying their final pretrial statement that mr. Arnold is actually going to be a witness he's never been disclosed you know he shouldn't be allowed to testify the court this is in chambers the courts and we filed a motion in limine and the court issued a ruling on that I want to say it was August 27th it was right before the trial August 27th saying mr. Arnold will be allowed to testify and he's not going to be disqualified because it would be it was so late in the game it would be unfair to the defendants to lose their trial counsel right before the court did that sua sponte court told us don't bother trying to disqualify him because it's we're not gonna let it happen the defendants is that in the record that's in the record that's in the judge of course you're telling me it's in the judges it's in the judges order could have been in chambers discussion no no that that is an order of the judge I believe it was August 27th now I've taken too much of your time in my colleagues no doubt thank you sorry that I've done that oh yes well it is simply in the record as I said transcript 108 page ID 3 1 3 0 2 3 1 3 1 that they declined to produce that they they said they would not produce their their attorneys fees magistrate Kemp then issues his order and judge frost affirms that order the first time we had any red light is on so I when I said do you have any concluding comments I beg your pardon your honor thank you well we'll submit there's obviously a great many other issues in the case they've been fully briefed and we'll simply take the rest on on the briefs and thank you your honor one question and that is with respect to the these claims of breach of fiduciary duty on your part me on the part of prosper may have been different than the claims heard by the arbitrator and ultimately the state court but it seems to me that the damages would absolutely be overlapping I don't understand that these claims are prospers diverting money to themselves and and and not paying us our interest there why would they not be duplicated they were entirely separate issues for different periods of time maybe different issues but I'm saying the damages have to be overlapping arboret arbitrators award of that 1.4 million covered monies that defendants had paid to themselves up to why wouldn't race judicata bar your your claims of breach of fiduciary duty then because they're brief claims for breach of the damages have to be exactly they do not your honor the September 30th defendants have taken a series of distributions up through September of 2008 that was what the arbitration was was about we asked the arbitrator when we found out about these other issues to handle those follow-on claims meaning things from September 30th 2008 until the dissolution of big research as well the arbitrator declined that and of course when we filed this action the defendants did not say that those are issues that are not everybody understands these action involve only post September that's correct in a that's right that's right so there's no overlap whatsoever at any level between the first set of claims and the claims that were before judge frost and the defendants would agree with that thank you honors thank you both for your argument the case will be submitted would the clerk call the next case